# UNITED STATES DISTRICT COURT
for the
Eastern District of California

| | |
|---|---|
| United States of America<br>v.<br><br>ANIBAL HERNANDEZ SANTANA<br><br>*Defendant(s)* | Case No. 2:25-mj-0131 JDP |

**FILED**
Sep 22, 2025
CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA

## AMENDED CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.
On or about the date(s) of __Sept. 19, 2025__ in the county of __Sacramento__ in the __Eastern__ District of __California__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 922(q)(2)(A) | Possession of a firearm within a school zone |
| 18 U.S.C. § 922(q)(3)(A) | Discharge of a firearm within a school zone |
| 47 U.S.C. § 333 | Interference with a radio communication station |

This criminal complaint is based on these facts:

(see attachment)

☒ Continued on the attached sheet.

/s/
*Complainant's signature*

Kyle Roberts, Task Force Officer
Federal Bureau of Investigation
*Printed name and title*

Sworn to me and signed via telephone.

Date: September 22, 2025

*Judge's signature*

City and state: Sacramento, California    Chi Soo Kim, U.S. Magistrate Judge
*Printed name and title*

## AFFIDAVIT

I, Kyle Roberts, having been duly sworn, state as follows:

### I. INTRODUCTION AND AGENT BACKGROUND

1.     I am a Detective/Task Force Officer with the Sacramento Police Department and have been since May 13, 2024.  I am currently assigned to the FBI Joint Terrorism Task Force.  As a deputized federal agent, I am authorized to investigate violations of laws of the United States issued under the authority of the United States.  My investigative responsibilities include ideological violent crime.

2.      In July of 2014, I attended the Sacramento Police Academy and graduated in December of 2014.  This academy was certified by the California Commission on Peace Officer Standards and Training (POST).  During this approximately six (6) month long academy, I received basic instruction in all aspects of policing which included but was not limited to: investigation, interviewing, criminal law, arrest procedures, firearms, arrest control, and police tactics.  I also received twenty (20) hours of training from experienced narcotics investigators regarding the identification of illegal narcotics, including but not limited to: methamphetamine, cocaine hydrochloride, cocaine base/rock cocaine, heroin, and marijuana.  These experienced narcotic investigators discussed, demonstrated, and lectured how these drugs were used, transported, packaged for sale, and sold.

3.     Since December of 2014 to present, I have conducted, as well as participated in, no less than one hundred (100) preliminary criminal investigations, including but not limited to: homicide, rape, robbery, burglary, assault, fraud, larceny, traffic offenses, and various narcotic related offenses.  During these investigations, I conducted interviews with victims, witnesses, and suspects and have made numerous arrests as a result.

4.     The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses.  This affidavit is intended

1

to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

5. Where statements made by other individuals are referenced in this Affidavit, such statements are described in sum and substance and in relevant parts only. Similarly, where information contained in reports and other documents or records is referenced in this Affidavit, such information is also described in sum and substance and in relevant parts only.

6. Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that ANIBAL HERNANDEZ SANTANA has violated 18 U.S.C. § 922(q)(2)(A) – possession of a firearm within a school zone[1]; 18 U.S.C. § 922(q)(3)(A) – discharge of a firearm within a school zone, and; 47 U.S.C. § 333 – interference with a radio communication station, which prohibits "willfully or maliciously interfere[ing] with or caus[ing] interference to any radio communications[2] of any station[3] licensed or authorized by or under this chapter or operated by the United States Government."

7. The FBI is investigating a shooting to a television station in Sacramento that occurred on Sept. 19, 2025. The Sacramento Police Department identified HERNANDEZ SANTANA as the shooter. HERNANDEZ SANTANA was subsequently arrested for the shooting later that evening at approximately 1800 hours on the state charges of Cal. Penal Code § 245(A)(2) – Assault with a firearm, § 246 – Shooting at an inhabited dwelling, and § 246.3(A) – willful discharge of a firearm in a grossly negligent manner.

8. HERNANDEZ SANTANA posted bail and was released from custody the next day at approximately 1350 hours. After his release, detectives at the Sacramento Police

---

[1] A "school" is "a school which provides elementary or secondary education, as determined under State law." 18 U.S.C. § 921(a)(27). A "school zone" means a location "within a distance of 1,000 feet from the grounds of a public, parochial or private school." 18 U.S.C. § 921(a)(26)(B).

[2] A "radio communication" is defined as "the transmission of writing, signs, signals, pictures, and sounds of all kinds, including all instrumentalities, facilities, apparatus, and services (among other things, the receipt, forwarding, and delivery of communications) incidental to such transmission." 47 U.S.C. § 153(40).

[3] A "radio station" means "a station equipped to engage in radio communication or radio transmission of energy." 47 U.S.C. § 153(42).

Department executed a search of HERNANDEZ SANTANA's vehicle. During the search, detectives located a handwritten note that read, "For hiding Epstein & ignoring red flags. Do not support Patel, Bongino, & AG Pam Bondie. They're next. – C.K. from above."

9. The FBI conducted a probable cause arrest on HERNANDEZ SANTANA later that Saturday evening. The United States obtained a criminal complaint on Sunday, which charged a single violation of 47 U.S.C. § 333. This amended complaint re-alleges the same 47 U.S.C. § 333 charge and charges additional violations of 18 U.S.C. § 922(q)(2)(A) and 18 U.S.C. § 922(q)(3)(A).

## PROBABLE CAUSE

10. KXTV, LLC, which operates as ABC 10 and ABC 10 News ("KXTV/ABC 10"), is a television station in Sacramento, within the State and Eastern District of California. KXTV/ABC 10 is a radio station as defined under 47 U.S.C. § 153(42), in that it is a station engaged in broadcasting signals for images and sounds utilizing radio waves. KXTV/ABC 10 holds a federal television broadcast license from the Federal Communications Commission.

11. KXTV/ABC 10 owns and operates facilities located at 400 Broadway Street in Sacramento. KXTV/ABC 10 is the sole occupant of those premises, which house its main studios. The exterior of the building is marked with signage that states "KXTV" and "ABC 10."

12. On Sept. 19, 2025, at approximately 1334 hours, the Sacramento Police Department responded to the KXTV/ABC 10 station, located at 400 Broadway Street, regarding a shooting into an inhabited dwelling. The north window of the building was struck by gunfire. Video surveillance of the shooting suspect showed him wearing a gray t-shirt, dark colored pants, gray and white shoes, and a dark colored satchel worn around his torso.

13. The shooting interfered with the KXTV/ABC 10's radio communications. This interference included, but was not limited to, employee(s) on premises sheltered in place and the cancellation of a planned news conference.

14. Officers on scene contacted a witness who provided officers with a spent casing (9mm). A second witness provided a suspect vehicle description. Through video surveillance,

police observation devices, and license plate readers, Sacramento Police Detectives were able to identify the suspect vehicle as a white Nissan Kicks SUV (CA LIC# BORI78).  A DMV records check showed the vehicle was registered to HERNANDEZ SANTANA, at 5483 Carlson Drive Apartment 22, Sacramento.  A WebKPF query of HERNANDEZ SANTANA indicated that he was a male adult, DOB 01/11/1961, 5 feet 5 inches tall, 148 pounds, black hair, brown eyes, and a Sacramento Xref number of 3702279.  In a Cal-photo query, HERNANDEZ SANTANA appeared to look similar to the suspect.

15.     Officers located three holes in a north window of the lobby at 400 Broadway consistent with bullet damage.  The building was occupied at the time of the shooting.  Crime Scene Investigators were able to recover a spent projectile from a doorway in the building's lobby.

16.     That evening, Sacramento Police Detectives located HERNANDEZ SANTANA and detained him as he exited his residence, 5483 Carlson Drive Apartment 22 in Sacramento. Judge Benjamin Galloway of the Sacramento County Superior Court issued a search warrant was for HERNANDEZ SANTANA, his residence, and the Nissan (CA LIC# BORI78).  During the search of HERNANDEZ SANTANA's home, detectives located a dark colored satchel that appeared consistent with the satchel that was worn by the suspect as previously observed on video surveillance.  Inside the satchel, detectives located a Sub Compact 9mm handgun.  This is the same caliber as the bullet and casing that were recovered from scene of the shooting.  The handgun was inside a holster with an empty magazine.  Detectives conducted a gunshot residue (GSR) test on HERNANDEZ SANTANA's hands which tested presumptive positive. Additionally, detectives located a whiteboard planner attached to HERNANDEZ SANTANA's refrigerator. The planner displayed days of the week. Under "Friday," detectives observed a handwritten note that stated, "Do the Next Scary Thing."  Based on the aforementioned information, HERNANDEZ SANTANA was arrested and booked into Sacramento County Main Jail.

17. The next day, at approximately 1350 hours, HERNANDEZ SANTANA posted bail and was released from custody.

18. Law enforcement executed the search of searched HERNANDEZ SANTANA's vehicle after his release on Sept. 20, 2025. During the search of the vehicle, detectives located a handwritten note that read, "For hiding Epstein & ignoring red flags. Do not support Patel, Bongino, & AG Pam Bondi. They're next. – C.K. from above."

19. The FBI conducted a probable cause arrest of HERNANDEZ SANTANA later that evening.

### ADDITIONAL PROBABLE CAUSE TO SUPPORT 18 U.S.C. § 922(Q) CHARGES

20. Approximately two minutes before firing three rounds in front of KXTV/ABC 10 station, HERNANDEZ SANTANA fired a single round while standing on the public sidewalk in front of 2555 3rd street, which is located adjacent to the rear parking lot and approximately 300 feet to the southwest corner KXTV/ABC 10 station. Detectives were able to positively identify HERNANDEZ SANTANA as the suspect who fired the round.

21. Health Professions High School (451 McClatchy Way) is a public high school within the Sacramento City Unified School District and provides secondary education under California state law. Leataata Floyd Elementary School (401 McClatchy Way) is a public elementary school within the Sacramento City Unified School District and provides primary education under California state law.

22. On September 21, 2025, investigators from FBI Sacramento Joint Terrorism Task Force utilized a stroll meter to determine that the initial shot in front of 2555 3rd Street was fired approximately 834 feet from the fence line of Health Professions High School. Additionally, Leataata Floyd Elementary School is located to the west and immediately adjacent to Health Professions High School. Investigators were unable to stroll meter the distance from area of the shooting to the fence line of Leataata Floyd Elementary School due to terrain difficulties. However, utilizing the measure tool on google maps, investigators estimated the distance from

where HERNANDEZ SANTANA fired the initial round to the fence line of Leataata Floyd Elementary School to be approximately 845 feet:



23.     On September 21, 2025, investigators from FBI Sacramento Joint Terrorism Task Force canvassed the area.  In addition to the two schools noted above, investigators observed several school zone signs and a building that housed district operations for Sacramento City Unified School District.  Pertinently, investigators saw a school zone sign near the intersection of 5th Street and Lug Lane, which was visible along HERNANDEZ SANTANA's estimated path of travel before the shootings.  Additionally, along HERNANDEZ SANTANA's estimated path of travel was the district operations office for the Sacramento City Unified School District, located at 425 1st Avenue.  Investigators observed multiple placards and signs indicating school district facilities, including a 5-sided placard stating, "Tobacco Free School District."

24.     Additionally, Sacramento Police Department Detectives learned from both an interview of HERNANDEZ SANTANA's estranged wife and from a California DMV records query, that HERNANDEZ SANTANA had lived at 1513 Claudia Drive in Sacramento for

several years and continues to frequent that area. This is approximately 4.5 miles or 9 minutes' drive time from the location of Leataata Floyd Elementary School and Health Professions High School. Due to HERNANDEZ SANTANA documented familiarity with the area and signage along his estimated route of travel, there is probably cause to believe that HERNANDEZ SANTANA was aware of the locations for both schools.

## CONCLUSION

25.  For the reasons stated above, there is probable cause to believe that HERNANDEZ SANTANA violated 18 U.S.C. § 922(q)(2)(A); 18 U.S.C. § 922(q)(3)(A); and 47 U.S.C. § 333.

Respectfully submitted,

/s/
Kyle Roberts
Detective/FBI Task Force Officer
Sacramento Police Department

Subscribed and sworn to me before me
over the telephone pursuant to Fed. R.
Crim. P. 4.1 and 4(d) on:

The Honorable Chi Soo Kim
UNITED STATES MAGISTRATE JUDGE

/s/ *Elliot C. Wong*
Approved as to form by AUSA Elliot C. Wong

7

## United States v. ANIBAL HERNANDEZ SANTANA
**Penalty for Amended Criminal Complaint**

**Defendant**
**Anibal Hernandez Santana**

### COUNT 1:

VIOLATION:   18 U.S.C. § 922(q)(2)(A) – possession of a firearm within a school zone

PENALTIES:   A maximum of up to five years imprisonment, which shall not run concurrently with any other term of imprisonment imposed under any other provision of law;
Fine of up to $250,000; or both fine and imprisonment;
Supervised release of up to three years

SPECIAL ASSESSMENT: $100 (mandatory on each count)

### COUNT 2:

VIOLATION:   18 U.S.C. § 922(q)(3)(A) – discharge of a firearm within a school zone

PENALTIES:   A maximum of up to five years imprisonment, which shall not run concurrently with any other term of imprisonment imposed under any other provision of law;
Fine of up to $10,000; or both fine and imprisonment;
Supervised release of up to three years

SPECIAL ASSESSMENT: $100 (mandatory on each count)

### COUNT 3:

VIOLATION:   47 U.S.C. § 333 – Interference with a radio communications station

PENALTIES:   A maximum of up to one year imprisonment;
Fine of up to $10,000; or both fine and imprisonment;
Supervised release of up to one year

SPECIAL ASSESSMENT: $100 (mandatory on each count)